## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF VIRGINIA
#### (Richmond Division)

| | |
|---|---|
| HERBST CAPITAL MANAGEMENT, LLC, on Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>INDIVIOR PLC, MARK CROSSLEY, and RYAN PREBLICK,<br><br>Defendants. | Case No.   3:24cv554<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Herbst Capital Management, LLC ("Plaintiff"), on behalf of itself and all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Indivior PLC ("Indivior" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

### NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Indivior securities between

1

February 22, 2024 and July 8, 2024, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officers.

2.      Indivior is a global pharmaceutical company that develops, manufactures, and markets drugs to treat opioid use disorders ("OUD") and serious mental illnesses.  Indivior's flagship drug is SUBLOCADE, a monthly injection used to treat moderate to severe OUD.  In 2023, sales of SUBLOCADE generated net revenue of $630 million, which accounted for 58% of Indivior's net revenue in 2023.

3.      Indivior also sells PERSERIS, which is an injection to treat schizophrenia in U.S. adults.  In 2023, PERSERIS sales generated net revenue of $42 million.

4.      In October 2023, Indivior launched OPVEE, a nasal spray to reverse opioid overdoses on an emergency basis.

5.      In February 2024, Indivior announced its fourth quarter ("Q4") and full year ("FY") 2023 results and provided the following net revenue guidance for FY 2024: (i) net revenue guidance in a range of $1.24-$1.33 billion; (ii) SUBLOCADE net revenue guidance in a range of $820-$880 million; (iii) OPVEE net revenue guidance in a range of $15-$25 million; and (iv) PERSERIS net revenue guidance in a range of $55-$65 million.  Indivior reaffirmed the foregoing net revenue guidance, in whole or in part, multiple times in April, May, and June 2024.

6.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects.  Specifically, Defendants (i) grossly overstated their ability to forecast the negative impact of certain legislation on the financial prospects of Indivior products, which forecasting ability was far less capable and

2

effective than Defendants had led investors and analysts to believe; (ii) overstated the financial prospects of SUBLOCADE, PERSERIS and OPVEE, and thus overstated the Company's anticipated revenue and other financial metrics; (iii) knew or recklessly disregarded that because of the negative impact of certain legislation on the financial prospects of Indivior's products, Indivior was unlikely to meet its own previously issued and repeatedly reaffirmed FY 2024 net revenue guidance, including its FY 2024 net revenue guidance for SUBLOCADE, PERSERIS and OPVEE; (iv) knew or recklessly disregarded that Indivior was at a significant risk of, and/or was likely to, cease all sales and marketing activities related to PERSERIS; and (v) knew or recklessly disregarded that, as a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

7.     On July 9, 2024, Indivior issued a press release "announc[ing] a business update encompassing [its] outlook for [second quarter ('Q2')] and FY 2024 financial performance" ("July 9 Update").  The July 9 Update reduced FY 2024 (i) total net revenue guidance to $1.15-$1.215 billion from the previous range of $1.24-$1.33 billion; (ii) SUBLOCADE net revenue guidance to $765-$805 million from the previous range of $820-$880 million; and (iii) OPVEE net revenue guidance to $9-14 million from the previous range of $15-25 million.  The July 9 Update also shockingly advised that the Company would immediately cease all sales and marketing activities related to PERSERIS.

8.     The July 9 Update explained that the reduction in guidance of SUBLOCADE  net revenue for FY 2024 resulted in major part from accelerated Medicaid disenrollments at the end of Q2 2024.  The July 9 Update further explained that the cessation of the marketing and sale of PERSERIS was due to the highly competitive market "and impending changes that are expected to intensify payor management in the treatment category in which PERSERIS participates," which

led the Company to conclude that "there is no longer a path forward for PERSERIS that is financially viable." Finally, the expected adoption of OPVEE had lagged expectations.

9.      Upon the above news and further commentary by Defendants on a subsequent conference call, Indivior's stock price fell $5.15 per share, or 33.57%, to close at $10.19 per share on July 9, 2024.

10.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

13.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Indivior is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' misconduct took place within this Judicial District.

14.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

15.     Plaintiff, as set forth in the attached Certification, acquired Indivior securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

16.     Defendant Indivior is organized under the laws of England and Wales with principal executive offices located at 10710 Midlothian Turnpike, Suite 125, North Chesterfield, Virginia 23235.  Since June 12, 2023, the Company's ordinary shares have traded in an efficient market on the Nasdaq Global Select Market ("NASDAQ") under the ticker symbol "INDV."  The Company's ordinary shares also trade in an efficient market on the London Stock Exchange ("LSE") under the same ticker symbol.

17.     Defendant Mark Crossley ("Crossley") has served as Indivior's Chief Executive Officer at all relevant times.

18.     Defendant Ryan Preblick ("Preblick") has served as Indivior's Chief Financial Officer at all relevant times.

19.     Defendants Crossley and Preblick are collectively referred to herein as the "Individual Defendants."

20.     The Individual Defendants possessed the power and authority to control the contents of Indivior's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Indivior's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Indivior, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and

were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

21.     Indivior and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

22.     Indivior is a global pharmaceutical company that develops, manufactures, and markets drugs to treat OUD and serious mental illnesses.  Indivior's flagship drug is SUBLOCADE, a monthly injection used to treat moderate to severe OUD.  In 2023, sales of SUBLOCADE generated net revenue of $630 million, which accounted for 58% of Indivior's net revenue in 2023.

23.     Indivior also sells PERSERIS, which is an injection to treat schizophrenia in U.S. adults.  In 2023, PERSERIS sales generated net revenue of $42 million.

24.     Finally, in October 2023, Indivior launched OPVEE, a nasal spray to reverse opioid overdoses on an emergency basis.

### Federal Legislation Relevant to Claims

25.     There are several federal statutes relevant to the claims in this action.  *First*, at the start of the COVID-19 pandemic, Congress enacted the Families First Coronavirus Response Act ("FFCRA"), which required Medicaid programs to keep people continuously enrolled through the end of the COVID-19 public health emergency ("PHE") in exchange for enhanced federal funding. However, as part of the Consolidated Appropriations Act ("CAA"), signed into law in December 2022, Congress de-linked the continuous enrollment provision from the PHE, thus ending

continuous enrollment on March 31, 2023, which led states to begin disenrolling people from Medicaid.

26.     *Second*, the Inflation Reduction Act of 2022 ("IRA"), among other things, requires the U.S. Department of Health and Human Services Secretary to negotiate, with respect to Medicare units and subject to a specified cap, the price of a set number of certain high Medicare spend drugs and biologicals per year starting in 2026, and penalizes manufacturers of certain Medicare Parts B and D drugs for price increases above inflation.

**Materially False and Misleading Statements Issued During the Class Period**[1]

*Q4 and FY 2023 Results*

27.     The Class Period begins on February 22, 2024, when Indivior issued a press release during pre-market hours announcing its Q4 and FY 2023 results.  The press release provided FY 2024 (i) net revenue guidance in a range of $1.24-$1.33 billion; (ii) SUBLOCADE net revenue guidance in a range of $820-$880 million; (iii) OPVEE net revenue guidance in a range of $15-$25 million; and (iv) PERSERIS net revenue guidance in a range of $55-$65 million.

28.     That same day, Indivior held an earnings call ("Q4 2023 Call") concerning Q4 2023 and FY 2023 results. During the Q4 2023 Call, Defendant Crossley stated in relevant part:

> Looking ahead to 2024, ***we expect another year of strong net revenue growth led by SUBLOCADE***. Taking the midpoint of our guidance, $850 million of SUBLOCADE net revenue implies 35% year-over-year growth, marking another major step towards our target of greater than $1.5 million in peak net revenue.

29.     Concerning PERSERIS, Defendant Crossley stated:

> Moving now to PERSERIS, it's fair to say that we did face some significant challenges in the last couple of quarters of 2023 as a result of competitive pressures from a well-funded new market entrant. ***We nevertheless continue to believe in the potential of the important medicine for schizophrenia based on its differentiated clinical profile and strong feedback we get from clinicians***. Furthermore, since we

---

[1] All emphases hereinafter are added, unless otherwise indicated.

expanded the field force nationally in 2022, we've seen increases in market coverage and penetration.

30.     Concerning OPVEE, Defendant Crossley stated:

> I would also say that we've had some early adopters and ***have been very pleased with how the medication has performed in actual market*** . . .  So very excited for OPVEE's potential, not only in 2024, but as a paradigm shift for helping those who've been subject to opioid overdose.

31.     Concerning SUBLOCADE, Defendant Preblick stated that our "full-year 2024 net revenue expectations for SUBLOCADE are $820 million to $880 million." He added:

> Our SUBLOCADE guidance range contemplates a ***modest impact*** from the Medicaid re-enrollment similar to full-year 2023 and we will continue to monitor this dynamic during the year. Overall, we remain confident in meeting our net revenue target of $1 billion run rate exiting 2025 and our longer-term net revenue target of greater than $1.5 billion.

32.     Concerning PERSERIS,  Defendant Preblick stated:

> For PERSERIS, our full-year 2024 net revenue expectations are $55 million to $65 million, which represents 43% growth at the midpoint. As Mark mentioned, we remain confident that PERSERIS' differentiated profile supports our peak net revenue expectations of $200 million to $300 million.

33.     The statements referenced in ¶¶ 28-32 were materially false and misleading because (i) Defendants knew the negative impact of Medicaid disenrollment under the CAA on SUBLOCADE sales was incredibly difficult to forecast, and thus it was false and misleading for Defendants to state that "we expect another year of strong net revenue growth led by SUBLOCADE," and that they expected only a "modest" impact from Medicaid disenrollment trends on SUBLOCADE sales; (ii) Defendants knew intensifying payor management under the IRA in the treatment category in which PERSERIS participates could threaten the financial viability of PERSERIS to the extent Indivior might need to cease marketing and sales of PERSERIS, and thus it was false and misleading for Defendants to state that "we nevertheless continue to believe in the potential of the important medicine for schizophrenia based on its

differentiated clinical profile and strong feedback we get from clinicians," and that they remained confident in delivering on their net revenue ambitions for PERSERIS; and (iii) early adoption of OPVEE was not meeting expectations, and thus it was false and misleading for Defendants to state that they were "very pleased with how the medication has performed in actual market."

### *Q1 2024 Results*

34.     On April 25, 2024, Indivior issued a press release announcing its first quarter ("Q1") 2024 results.  The press release downplayed headwinds impacting SUBLOCADE's growth while reaffirming the Company's FY 2024 guidance, stating, in relevant part:

> Our [Q1] results reflect continued double-digit top-line momentum led by SUBLOCADE (buprenorphine extended-release). The underlying demand for this transformative treatment for moderate-to-severe [OUD] remains strong and our strategy to expand prescribing in the justice system is delivering excellent results. SUBLOCADE's reported growth was, however, ***adversely impacted by transitory items, including accelerating Medicaid patient disenrollments***, a cyberattack on the largest U.S. medical claims processor and abnormal trade destocking. ***We fully expect these items to resolve as the year progresses and, combined with the benefits of recent commercial investments behind SUBLOCADE, we anticipate an acceleration in our top-and bottom-line growth over the remainder of 2024, particularly in the second half. We therefore reconfirm our 2024 guidance, including SUBLOCADE net revenue of $820m to $880m.***

35.     That same day, Indivior held an earnings call ("Q1 2024 Call") concerning Q1 2024 results.  During the Q1 2024 Call, Defendant Crossley stated in relevant part:

> [L]ed by SUBLOCADE, we delivered another quarter of solid double-digit top-line growth in the first quarter. Total net revenue grew 12% versus year-ago quarter to $284 million . . . . ***Turning to SUBLOCADE, we delivered year-over-year net revenue growth of 36% in the first quarter, which is in line with our [FY] growth expectations***. SUBLOCADE's sequential net revenue growth of 2% was lower than we planned. We believe growth in dispenses were negatively impacted by two external forces, including a higher-than-expected rate of Medicaid patient disenrollments and the cyberattack at Change Healthcare.
>
> ***Let me provide more color on how each of these impacted SUBLOCADE's growth in the quarter and why we remain confident in our [FY] 2024 net revenue guidance***. First, the most recent data on Medicaid renewals indicates a higher-than-expected number of patient disenrollments of over 20 million. Recall at the peak

during COVID, over 90 million patients were enrolled in Medicaid. This is particularly relevant in opioid use disorder treatment as the nature of the disease means that approximately 70% of our patients are covered by Medicaid. ***The impact of this disenrollment process will annualize at the end of June and therefore this headwind should begin to subside as we move through the second half of the year. Although the impact on SUBLOCADE's growth in the quarter was larger than expected, Medicaid disenrollment was a known dynamic***.

36.    Defendant Crossley later added:

With . . . ***Medicaid renewal annualizing at the end of June, we look forward to subsiding impacts from these transitory items, which we believe are masking the strong underlying demand for SUBLOCADE. In fact, early dispense trends in April are tracking back to the growth levels we had expected in [Q1]***.

37.    Concerning PERSERIS, Defendant Crossley stated:

Turning to PERSERIS, while competition has intensified in the risperidone LAI [long-acting injections] category, once-monthly risperidone products are gaining share rapidly, and the overall category is still growing. ***Against this backdrop, we continue to highlight PERSERIS' unique product profile, which continues to result in positive anecdotal prescriber feedback on product performance***. Sequential dispense growth was 10%, ***not only underscoring the good underlying momentum we're seeing, but also representing an acceleration from previous quarters***. We expect to augment our efforts with PERSERIS at the publication of real world evidence studies in the second half of 2024. ***Taken together, we remain confident in our [FY] net revenue guidance for PERSERIS and expect accelerating net revenue moving forward***.

38.    Subsequently, concerning SUBLOCADE, Defendant Preblick stated:

Medicaid disenrollment dynamics had a disproportionate impact on our company as more than two-thirds of SUBLOCADE patients are covered by Medicaid. This impact accelerated in Q1, beyond the low single-digit headwind we had seen in prior quarters. ***Looking ahead, we expect this trend to begin subsiding in the second half of 2024, as [Defendant Crossley] noted***.

39.    Concerning PERSERIS, Defendant Preblick stated:

Moving to PERSERIS, reported net revenue of $11 million was up 38% versus the prior year and down 8% sequentially, due to low single-digit million destocking in the quarter. Encouragingly, dispenses are up 10% sequentially. ***We remain confident in meeting our [FY] net revenue guidance of $55 million to $65 million***.

40.    Concerning OPVEE, Defendant Preblick stated:

OPVEE net revenue was modest in [Q1] as we continue to lay the foundational components for the launch as [Defendant Crossley] detailed. *We continue to expect [FY] net revenue of $15 million to $25 million, including an $8 million product order from BARDA*.

41. Defendant Preblick concluded his prepared remarks stating:

*Based on our expectations for a resolution of these transitory headwinds* and continued strong business execution, we remain comfortable with our guidance elements for [FY] 2024, *including SUBLOCADE net revenue of $820 million to $880 million*.

42. Later during the Q1 2024 Call, after an analyst asked Defendant Crossley to elaborate further concerning "growth headwinds from change in Medicaid," Crossley responded that "we have a continuing headwind of . . . the Medicaid renewal continuing, through to the half year where then we'll annualize that, *and that headwind will go away in the back half*." Defendant Crossley thereafter stressed that "we've got a few additional tailwinds."

43. The statements referenced in ¶¶ 34-42 were materially false and misleading because (i) Defendants knew the negative impact of Medicaid disenrollment under the CAA on SUBLOCADE sales was incredibly difficult to forecast, and thus it was false and misleading for Defendants to state that "[t]he impact of this disenrollment process *will* annualize at the end of June and therefore this headwind should begin to subside as we move through the second half of the year," that "with . . . Medicaid renewal annualizing at the end of June," the Medicaid disenrollment "*headwind will go away in the back half*," and that they "remain comfortable" with delivering on their net revenue ambitions for SUBLOCADE in 2024; (ii) Defendants knew intensifying payor management under the IRA in the treatment category in which PERSERIS participates could threaten the financial viability of PERSERIS to the extent Indivior might need to cease marketing and sales of PERSERIS, and thus it was false and misleading for Defendants to state that "we continue to highlight PERSERIS' unique product profile, which continues to

result in positive anecdotal prescriber feedback on product performance;" that they remained confident in delivering on their net revenue ambitions for PERSERIS in 2024; that they were seeing "good underlying momentum," and "an acceleration from previous quarters;" and that they expected "accelerating net revenue moving forward"; and (iii) early adoption of OPVEE was not meeting expectations, and thus it was false and misleading for Defendants to state that they continued to expect to deliver on their net revenue ambitions for OPVEE in 2024.

### *The May 2024 Presentation*

44.    On May 23, 2024, Indivior management gave a presentation ("May 2024 Presentation") as part of an analyst teach-in event in New York City, entitled "Transforming Lives and Driving Value Creation."  The May 2024 Presentation once again reaffirmed Defendants' prior FY 2024 net revenue guidance for SUBLOCADE, PERSERIS and OPVEE:

# FY 2024 Guidance[1]

| | |
|---|---|
| **Total Net Revenue** | **$1,240m to $1,330m** (up 18% at mid-point) |
| **Key Products:** | |
| • SUBLOCADE NR (Total) | • **$820m to $880m** (up 35% at mid-point) |
| • OPVEE NR | • **$15m to $25m** |
| • PERSERIS NR | • **$55m to $65m** (up 43% at mid-point) |
| **Adj. Gross Margin %** | Low to mid 80% range |
| **Adj. OPEX (SG&A + R&D):** | **$695m to $720m** |
| • SG&A | • **$575m to $590m** |
| • R&D | • **$120m to $130m** |
| **Adj. Op. Profit** | **$330m to $380m** (up 32% YOY with adj. operating margin[2] up ~300bps at the mid-point) |

[1] As of May 23, 2024, before exceptional items and assuming no material change in key FX rates vs FY 2023 average rates; mid-point %'s are versus FY 2023 on same basis

[2] Adjusted Operating Margin = Adjusted Operating Profit divided by Net Revenue

45.     Concerning PERSERIS, the May 2024 Presentation touted the drug as (i) enjoying a differentiation that is "clear and understandable" by delivering a superior performance as compared to competing drugs, and (ii) capturing a disproportionate share of "new-to-brand" LAI prescriptions.  Based on these factors, the May 2024 Presentation stated that management is "confident in delivering $200m to $300m Peak [Net Revenue] Goal for PERSERIS."  That confidence was reflected in the following graphic concerning the building blocks to achieving $200-$300 million in peak net revenue for PERSERIS:

13



46.   The statements referenced in ¶¶ 44-45 were materially false and misleading because (i) Defendants knew the negative impact of Medicaid disenrollment under the CAA on SUBLOCADE sales was incredibly difficult to forecast, and thus it was false and misleading for Defendants to depict that they continued to expect to deliver on their net revenue ambitions for SUBLOCADE in 2024; (ii) Defendants knew intensifying payor management under the IRA in the treatment category in which PERSERIS participates could threaten the financial viability of PERSERIS to the extent Indivior might need to cease marketing and sales of PERSERIS, and thus it was false and misleading for Defendants to depict that they continued to expect to deliver on

their net revenue ambitions for PERSERIS in 2024, and were confident in achieving peak revenue for PERSERIS of $200 million to $300 million; and (iii) Defendants knew early adoption of OPVEE was lagging expectations, and thus it was false and misleading for Defendants to depict that they continued to expect to deliver on their net revenue ambitions for OPVEE in 2024.

### *June 2024 Presentation*

47.     On June 5, 2024, Indivior management gave a presentation ("June 2024 Presentation") as part of the 2024 Jeffries Global Healthcare Conference, entitled "Transforming Lives and Driving Value Creation."  The June 2024 Presentation reiterated Indivior's FY 2024 net revenue guidance for SUBLOCADE and PERSERIS, as depicted in the following graphic:



48.     The statements referenced in ¶ 47 were materially false and misleading because (i) Defendants knew the negative impact of Medicaid disenrollment under the CAA on SUBLOCADE sales was incredibly difficult to forecast, and thus it was false and misleading for Defendants to depict that they continued to expect to deliver on their net revenue ambitions for

SUBLOCADE in 2024; and (ii) Defendants knew intensifying payor management under the IRA in the treatment category in which PERSERIS participates could threaten the financial viability of PERSERIS to the extent Indivior might need to cease marketing and sales of PERSERIS, and thus it was false and misleading for Defendants to depict that they continued to expect to deliver on their net revenue ambitions for PERSERIS in 2024.

49.     In sum, as specified above, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects throughout the Class Period.  Specifically, Defendants (i) grossly overstated their ability to forecast the negative impact of certain legislation on the financial prospects of Indivior products, which forecasting ability was far less capable and effective than Defendants had led investors and analysts to believe; (ii) overstated the financial prospects of SUBLOCADE, PERSERIS and OPVEE, and thus overstated the Company's anticipated revenue and other financial metrics; (iii) knew or recklessly disregarded that because of the negative impact of certain legislation on the financial prospects of Indivior's products, Indivior was unlikely to meet its own previously issued and repeatedly reaffirmed FY 2024 net revenue guidance, including its FY 2024 net revenue guidance for SUBLOCADE, PERSERIS and OPVEE; (iv) knew or recklessly disregarded that Indivior was at a significant risk of, and/or was likely to, cease all sales and marketing activities related to PERSERIS; and (v) knew or recklessly disregarded that, as a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

50.     On July 9, 2024, during pre-market hours, Indivior issued a press release "announc[ing] a business update encompassing [its] outlook for Q2 and FY 2024 financial performance[.]"  The July 9 Update reduced FY 2024 (i) total net revenue guidance to $1.15-

$1.215 billion from the previous range of $1.24-$1.33 billion; (ii) SUBLOCADE net revenue guidance to $765-$805 million from the previous range of $820-$880 million; and (iii) OPVEE net revenue guidance to $9-14 million from the previous range of $15-25 million. The July 9 Update also advised that the Company would immediately cease all sales and marketing activities related to PERSERIS.

51.     The July 9 Update explained that the reduction in guidance of SUBLOCADE  net revenue for FY 2024 resulted in major part from accelerated Medicaid disenrollments at the end of Q2 2024 that disproportionately impacted SUBLOCADE. The July 9 Update further explained that the cessation of the marketing and sale of PERSERIS was due to the highly competitive market "and impending changes that are expected to intensify payor management in the treatment category in which PERSERIS participates," which led the Company to conclude that "there is no longer a path forward for PERSERIS that is financially viable."  Finally, the expected adoption of OPVEE had lagged expectations.

52.     After issuing the July 9 Update, Indivior held a conference call ("July 9 Call") to discuss the July 9 Update.  During the July 9 Call, an analyst questioned Defendants on their visibility into the impact of Medicaid disenrollment on SUBLOCADE sales:

> Thank you very much for taking my questions. My first one was on the Medicaid disenrollment dynamic. ***Just wanted to understand what visibility you have on the timing.*** If you could help us how -- the complexity around the procedures to reenroll patients basically, what do they have to go through? How long does it take? I guess, in a nutshell, how complicated it is for patients who dropped to get back on coverage on Medicaid.

53.     Defendant Crossley responded by conceding for the first time that the impact of Medicaid disenrollment on SUBLOCADE sales is "***incredibly, incredibly difficult to forecast***":

> I think what we see with regards to Medicaid reenrollment visibility on timing. ***I think the first part of this is, it is incredibly, incredibly difficult to forecast with what we're seeing***. What we're seeing is states finalize their renewals, you see

patients holding out to the last date, almost in anticipation of losing it. When people are following out of coverage, there's an estimate that 69% of those falling out of coverage are due to procedural reasons. ***And so the time and pace at which they're re-enrolling, it's just very complicated to forecast that***.

And then we've seen the extension of the renewal process, which is pushed into Q3 for eight of the 11 remaining states with Alaska and D.C. in 2025 in New York not scheduled. ***So a lot of lack of precision and inability to forecast what is really a one-off item that is kind of unprecedented with no analog. So very tough to forecast this***.

When it comes to SUBLOCADE and the churn of patients, I think you're right. If I think about churn when it comes to disruption and re-enrollment, ***in this very unique patient base, that's a bit more chaotic than an average Medicaid patients [*sic], the process of managing paperwork to reenroll is not as normal of a process as it would be for you or me***. And so that process can be extended and take longer than we expect.

54.     Thereafter, another analyst inquired into "the changes in the [IRA]," and asked Defendants to "provide a little bit more detail on why that is specifically affecting" PERSERIS. Defendant Crossley revealed for the first time that the IRA is "***resulting in increased management of the category, which is impacting both price as well as volume as the category is managed with PERSERIS's lack of scale in the market***," and therefore, with respect to PERSERIS, "***what we see is not getting to profitability for a long period of time that we believe makes the product not financially viable***."

55.     Following the July 9 Update and the July 9 Call, Indivior's stock price fell $5.15 per share, or 33.57%, to close at $10.19 per share on July 9, 2024.

56.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

18

## SCIENTER ALLEGATIONS

57.     During the Class Period, Defendants had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time.   In particular, during the Class Period, Defendants knew or acted recklessly in disregarding that (i) the negative impact of Medicaid disenrollment under the CAA on SUBLOCADE sales was incredibly difficult to forecast, and thus it was false and misleading for Defendants to state, among other things, that they remained confident in delivering on their net revenue ambitions for SUBLOCADE in 2024; (ii) intensifying payor management under the IRA in the treatment category in which PERSERIS participates could threaten the financial viability of PERSERIS to the extent Indivior might need to cease marketing and sales of PERSERIS, and thus it was false and misleading for Defendants to state, among other things, that they remained confident in delivering on their net revenue ambitions for PERSERIS in 2024, and peak net revenue for PERSERIS of $200-$300 million; and (iii) early adoption of OPVEE was not meeting expectations, and thus it was false and misleading for Defendants to state, among other things, that they remained confident in delivering on their net revenue ambitions for OPVEE in 2024.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

58.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Indivior securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.   Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

59.     The members of the Class are so numerous that joinder of all members is impracticable.   Throughout the Class Period, Indivior securities were actively traded on the NASDAQ and LSE.   While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.   Record owners and other members of the Class may be identified from records maintained by Indivior or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

60.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

61.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.   Plaintiff has no interests antagonistic to or in conflict with those of the Class.

62.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.   Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Indivior;

- whether the Individual Defendants caused Indivior to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Indivior securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

63.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

64.  Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Indivior securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and LSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Indivior securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

65.  Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

66.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

67.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

68.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

69.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Indivior securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Indivior securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

70.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Indivior securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Indivior's finances and business prospects.

71.      By virtue of their positions at Indivior, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

72.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Indivior, the Individual Defendants had knowledge of the details of Indivior's internal affairs.

73.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of

Indivior.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Indivior's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Indivior securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Indivior's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Indivior securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

74.    During the Class Period, Indivior securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Indivior securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Indivior securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Indivior securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

75.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

76.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

77.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

78.     During the Class Period, the Individual Defendants participated in the operation and management of Indivior, and conducted and participated, directly and indirectly, in the conduct of Indivior's business affairs.  Because of their senior positions, they knew the adverse non-public information about Indivior's misstatement of income and expenses and false financial statements.

79.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Indivior's financial condition and results of operations, and to correct promptly any public statements issued by Indivior which had become materially false or misleading.

80.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and

public filings which Indivior disseminated in the marketplace during the Class Period concerning Indivior's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Indivior to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Indivior within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Indivior securities.

81.    Each of the Individual Defendants, therefore, acted as a controlling person of Indivior.  By reason of their senior management positions and/or being directors of Indivior, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Indivior to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Indivior and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

82.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Indivior.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: August 2, 2024                              Respectfully submitted,

**COHEN MILSTEIN SELLERS
& TOLL PLLC**

*/s/ Steven J. Toll*
Steven J. Toll (Va. Bar No. 15300)
Daniel S. Sommers
S. Douglas Bunch
1100 New York Avenue, N.W. Suite 500
Washington, D.C. 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
stoll@cohenmilstein.com
dsommers@cohenmilstein.com
dbunch@cohenmilstein.com

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

**WOHL & FRUCHTER LLP**
Joshua E. Fruchter
(*pro hac vice* application forthcoming)
25 Robert Pitt Drive, Suite 209G
Monsey, New York 10952
Telephone: (845) 290-6818
Facsimile: (718) 504-3773
jfruchter@wohlfruchter.com

*Attorneys for Plaintiff*

27

# CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.      I, Marcel Herbst, as the managing member of Herbst Capital Partners, LLC, which is the managing member of Herbst Capital Management, LLC ("HCM LLC"), make this declaration on behalf of HCM LLC pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.      I have reviewed a Complaint against Indivior PLC ("Indivior") and authorize the filing of a comparable complaint on behalf of HCM LLC.

3.      HCM LLC did not purchase or acquire Indivior securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.      HCM LLC is willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Indivior securities during the Class Period as specified in the Complaint, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.      The attached sheet lists all of HCM LLC's transactions in Indivior securities during the Class Period as specified in the Complaint.

6.      During the three-year period preceding the date on which this Certification is signed, HCM LLC has not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.      HCM LLC agrees not to accept any payment for serving as a representative party on behalf of the Class as set forth in the Complaint, beyond its pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as

ordered or approved by the Court.

       8.     I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.

7/23/2024

**Executed** _____

              **(Date)**



                         **(Signature)**

                       Marcel Herbst

                       **(Type or Print Name)**

**Indivior PLC (INDV)**                                    **Herbst Capital Management, LLC**

### List of Purchases/Acquisitions and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase/Acquisition | 7/3/2024 | 1,000 | $15.1557 |
| Purchase/Acquisition | 7/3/2024 | 1,000 | $15.1699 |
| Purchase/Acquisition | 7/3/2024 | 1,000 | $15.1460 |
| Purchase/Acquisition | 7/3/2024 | 500 | $15.1420 |
| Sale | 3/1/2024 | (2,000) | $22.9500 |