**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

--------------------------------------------------------
)
)
IN RE INDIVIOR PLC SECURITIES )   Case No. 3:24-cv-554 (HEH)
LITIGATION )   **ORAL ARGUMENT REQUESTED**
)
)
--------------------------------------------------------

**REPLY IN FURTHER SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

Robert J. Giuffra, Jr.*              Brian E. Pumphrey (VSB No. 47312)
David M.J. Rein*                     Garrett H. Hooe (VSB No. 83983)
Julia A. Malkina*                    Frank Talbott V (VSB No. 86396)
SULLIVAN & CROMWELL LLP              MCGUIREWOODS LLP
125 Broad Street                     Gateway Plaza
New York, New York 10004             800 East Canal Street
Telephone: (212) 558-4000            Richmond, Virginia 23219
Facsimile: (212) 558-3588            Telephone: (804) 775-1000
giuffrar@sullcrom.com                Facsimile: (804) 775-1061
reind@sullcrom.com                   bpumphrey@mcguirewoods.com
malkinaj@sullcrom.com                ghooe@mcguirewoods.com
                                     ftalbott@mcguirewoods.com

* Admitted *pro hac vice*

*Counsel for Defendants*

February 24, 2025

**TABLE OF CONTENTS**

*Page*

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT ...................................................................................................................3

I.    PLAINTIFF FAILS TO PLEAD ANY MATERIAL MISSTATEMENTS AS
      A MATTER OF LAW ...........................................................................................3

      A.    Defendants' Statements About SUBLOCADE Are Not Actionable.............3

            1.    Plaintiff Cannot Escape That Defendants' Projections Were Opinions,
                  Not Guarantees...................................................................................3

            2.    Defendants' Projections Were Accompanied by Detailed Warnings ................7

      B.    Plaintiff Does Not Plead a Material Misstatement About PERSERIS ...........9

            1.    Statements 1 and 6's Generic References to Positive Customer
                  Feedback Are Not Actionable...............................................................9

            2.    Defendants' Other PERSERIS Statements Are Not Actionable......................13

II.   PLAINTIFF HAS NOT PLED THE REQUIRED STRONG INFERENCE
      OF SCIENTER...................................................................................................15

      A.    Plaintiff Does Not Allege Any Motive or Opportunity for Securities Fraud ................15

      B.    Plaintiff Does Not Allege Intentional Misconduct or Severe Recklessness..................17

CONCLUSION ...............................................................................................................20

## TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Basic Inc.* v. *Levinson*,
   485 U.S. 224 (1988).................................................................................................11

*Boca Raton Firefighters & Police Pension Fund* v. *Bahash*,
   506 F. App'x 32 (2d Cir. 2012) ...............................................................................13

*Boston Ret. Sys.* v. *Telefonaktiebolaget LM Ericsson*,
   No. 23-cv-940, 2024 WL 4023842 (2d Cir. 2024) ..................................................11

*Bowman* v. *Select Portfolio Servicing, Inc.*,
   704 F. Supp. 3d 633 (D. Md. 2023).............................................................................7

*Boykin* v. *K12, Inc.*,
   54 F.4th 175 (4th Cir. 2022) ........................................................................3, 10, 20

*Cambridge Retirement System* v. *Jeld-Wen Holding, Inc.*,
   496 F. Supp. 3d 952 (E.D. Va. 2020) .......................................................................12

*Campbell* v. *Lexmark International Inc.*,
   234 F. Supp. 2d 680 (E.D. Ky. 2002) .....................................................................2, 16

*City of Hialeah Employees' Retirement System* v. *FEI Co.*,
   289 F. Supp. 3d 1162 (D. Or. 2018) .........................................................................13

*Construction Industries & Laborers Joint Pension Trust* v. *Carbonite, Inc.*,
   22 F.4th 1 (1st Cir. 2021).........................................................................................18

*Cozzarelli* v. *Inspire Pharmaceuticals Inc.*,
   549 F.3d 618 (4th Cir. 2008) .................................................................................2, 17

*Credle* v. *Virginia Community College System*,
   No. 24-cv-233, 2025 WL 27827 (E.D. Va. Jan. 3, 2025)...........................................6

*Electrical Workers Pension Trust Fund* v. *CommScope, Inc.*,
   No. 10-cv-00062, 2013 WL 4014978 (W.D.N.C. Aug. 6, 2013) ...............................8

*Employees' Retirement System of the City of Baton Rouge & Parish of East Baton
   Rouge* v. *MacroGenics, Inc.*,
   61 F.4th 369 (4th Cir. 2023) ...........................................................................3, 6, 7, 9

*Estrella* v. *Wells Fargo Bank, N.A.*,
   497 F. App'x 361, 362 (4th Cir. 2012) ......................................................................20

*Furher* v. *Ericsson LM Telephone Co.*,
    363 F. App'x 763 (2d Cir. 2009) ....................................................................................5

*Glaser* v. *The9, Ltd.*,
    772 F. Supp. 2d 573 (S.D.N.Y. 2011)......................................................................18, 19

*Harrington* v. *Tetraphase Pharmsaceuticals Inc.*,
    Nos. 16-cv-10133, 16-cv-10577, 2017 WL 1946305 (D. Mass. May 9, 2017).........................9

*Harris* v. *Ivax Corp.*,
    182 F.3d 799 (11th Cir. 1999) ....................................................................................9

*Hillson Partners Limited Partnership* v. *Adage, Inc.*,
    42 F.3d 204 (4th Cir. 1994) .................................................................................7, 13

*In re Adient plc Securities Litigation*,
    No. 18-cv-9116, 2020 WL 1644018 (S.D.N.Y. Apr. 2, 2020) ...................................................6

*In re Bristol-Myers Squibb Securities Litigation*,
    312 F. Supp. 2d 549 (S.D.N.Y. 2004).........................................................................5

*In re Diebold Nixdorf, Inc., Securities Litigation*,
    No. 19-cv-6180, 2021 WL 1226627 (S.D.N.Y. Mar. 30, 2021).............................................15

*In re Emergent Biosolutions Inc. Securities Litigation*,
    No. 21-cv-955, 2023 WL 5671608 (D. Md. Sept. 1, 2023).....................................................12

*In re Humphrey Hospitality Trust, Inc. Securities Litigation*,
    219 F. Supp. 2d 675 (D. Md. 2002)...........................................................................9

*In re iRobot Corp. Securities Litigation*,
    527 F. Supp. 3d 124 (D. Mass. 2021) .....................................................................14

*In re Marriott International, Inc.*,
    31 F.4th 898 (4th Cir. 2022) ....................................................................................4

*In re Marriott International, Inc., Customer Data Security Breach Litigation*,
    543 F. Supp. 3d 96 (D. Md. 2021).....................................................................1, 6, 8

*In re Pareteum Securities Litigation*,
    No. 19-cv-9767, 2021 WL 3540779 (S.D.N.Y. Aug. 11, 2021)...............................................19

*In re PEC Solutions Securities Litigation*,
    No. 03-cv-331, 2004 WL 1854202 (E.D. Va. May 24, 2004)...................................................8

*In re Silicon Graphics Inc. Securities Litigation*,
    183 F.3d 970 (9th Cir. 1999) ...................................................................................16

*In re Stratosphere Corp. Securities Litigation*,
    1 F. Supp. 2d 1096 (D. Nev. 1998) ...................................................................................4

*In re Trex Co. Securities Litigation*,
    454 F. Supp. 2d 560 (W.D. Va. 2006) ..........................................................................14, 15

*In re Unicapital Corp. Securities Litigation*,
    149 F. Supp. 2d 1353 (S.D. Fla. 2001) ...........................................................................13

*In re USEC Securities Litigation*,
    190 F. Supp. 2d 808 (D. Md. 2002) .................................................................................7, 14

*In re Willis Towers Watson plc Proxy Litigation*,
    937 F.3d 297 (4th Cir. 2019) ...........................................................................................12

*In re Xinhua Finance Media, Ltd. Securities Litigation*,
    No. 07-cv-3994, 2009 WL 464934 (S.D.N.Y. Feb. 25, 2009) .................................................11

*Jiajia Luo* v. *Sogou, Inc.*,
    465 F. Supp. 3d 393 (S.D.N.Y. 2020).................................................................................11

*Katyle* v. *Penn National Gaming, Inc.*,
    637 F.3d 462 (4th Cir. 2011) ...........................................................................................13

*KBC Asset Management NV* v. *DXC Technology Co.*,
    19 F.4th 601 (4th Cir. 2021) ...........................................................................................19

*Lambert* v. *Austin Industries*,
    544 F.3d 1192 (11th Cir. 2008) .......................................................................................4

*Longman* v. *Food Lion, Inc.*,
    197 F.3d 675 (4th Cir. 1999) ...........................................................................................11

*Maguire Financial, LP* v. *PowerSecure International, Inc.*,
    876 F.3d 541 (4th Cir. 2017) ...........................................................................................19

*Marsh Group* v. *Prime Retail, Inc.*,
    46 F. App'x 140 (4th Cir. 2002) .......................................................................................1, 3

*Oklahoma Firefighters Pension & Retirement System* v. *K12, Inc.*,
    66 F. Supp. 3d 711 (E.D. Va. 2014) .................................................................................1, 4, 20

*Omnicare, Inc.* v. *Laborers District Council Construction Industry Pension Fund*,
    575 U.S. 175 (2015).................................................................................4, 5, 7

*Pearlstein* v. *Blackberry Ltd.*,
    93 F. Supp. 3d 233 (S.D.N.Y. 2015).................................................................................11

*Plumbers & Pipefitters Local Union 719 Pension Fund* v. *Zimmer Holdings, Inc.*,
679 F.3d 952 (7th Cir. 2012) ................................................................5

*Plumbers & Steamfitters Local 773 Pension Fund* v. *Canadian Imperial Bank of Commerce*,
694 F. Supp. 2d 287 (S.D.N.Y. 2010).................................................18

*Plymouth County Retirement Association* v. *Primo Water Corp.*,
966 F. Supp. 2d 525 (M.D.N.C. 2013) ................................................10

*Plymouth County Retirement Association* v. *ViewRay, Inc.*,
556 F. Supp. 3d 772 (N.D. Ohio 2021)................................................16

*Raab* v. *General Physics Corp.*,
4 F.3d 286 (4th Cir. 1993) ...............................................................1, 7

*Ronconi* v. *Larkin*,
253 F.3d 423 (9th Cir. 2001) ..............................................................16

*San Antonio Fire & Police Pension Fund* v. *Syneos Health Inc.*,
75 F.4th 232 (4th Cir. 2023) ..........................................................15, 20

*Singer* v. *Reali*,
883 F.3d 425 (4th Cir. 2018) ...............................................................12

*Singh* v. *Schikan,*
106 F. Supp. 3d 439 (S.D.N.Y. 2015)..................................................12

*Sinnathurai* v. *Novavax, Inc.*,
645 F. Supp. 3d 495 (D. Md. 2022)...........................................12, 17, 19

*Steamfitters Local 449 Pension Plan* v. *Skechers USA, Inc.*,
412 F. Supp. 3d 353 (S.D.N.Y. 2019).....................................................4

*Tchatchou* v. *India Globalization Capital Inc.*,
No. 18-cv-3396, 2021 WL 307415 (D. Md. Jan. 29, 2021)...................12

*Teachers' Retirement System of Louisiana* v. *Hunter*,
477 F.3d 162 (4th Cir. 2007) ...............................................................16

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)........................................................................2, 15

*United States* v. *Kipp*,
No. 15-cv-00244, 2017 WL 2662983 (W.D.N.C. June 20, 2017)..........17

*Utesch* v. *Lannett Co.*,
316 F. Supp. 3d 895 (E.D. Pa. 2018) ...................................................18

*Wozniak* v. *Align Technology, Inc.*,
    850 F. Supp. 2d 1029 (N.D. Cal. 2012) ..................................................................11

*Yates* v. *Municipal Mortgage & Equity, LLC*,
    744 F.3d 874 (4th Cir. 2014) .................................................................................20

*Zak* v. *Chelsea Therapeutics International, Inc.*,
    780 F.3d 597 (4th Cir. 2015) .................................................................................17

**Statutes**

15 U.S.C. § 78u-4 ......................................................................................................3

15 U.S.C. § 78u-5 ....................................................................................................10

## PRELIMINARY STATEMENT

Plaintiff's Opposition confirms that settled law requires dismissal of the Complaint with prejudice for two independent reasons:

*First*, Plaintiff cannot avoid that "[p]redictions of future growth," like those made by Defendants here, are not actionable "because they will almost always prove to be wrong in hindsight." *Raab* v. *Gen. Phys. Corp.*, 4 F.3d 286, 290 (4th Cir. 1993). In this Circuit, claims based on projections are not actionable unless they challenge "specific statements of fact or . . . guarantees." *Marsh Grp.* v. *Prime Retail, Inc.*, 46 F. App'x 140, 146 (4th Cir. 2002). The Complaint alleges neither. To try to evade dismissal, Plaintiff repeatedly asserts that CEO Crossley's use of the word "will" in a response to an earnings call question somehow transformed Defendants' statements about SUBLOCADE into guarantees. (Opp. 1, 4, 8, 9, 14, 24.) But Plaintiff conspicuously ignores that he began with "I think," leaving no question that Mr. Crossley was expressing his opinion, not making a guarantee. *See Okla. Firefighters Pension & Ret. Sys.* v. *K12, Inc.*, 66 F. Supp. 3d 711, 726-27 (E.D. Va. 2014) (holding "I think . . ." is opinion statement). Nor can Plaintiff avoid dismissal by claiming that Defendants' warnings cannot be assessed on this motion to dismiss. Courts routinely dismiss securities claims based on risk warnings, like Defendants', "tailored to the specific risks the company faces." *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 543 F. Supp. 3d 96, 121 (D. Md. 2021), *aff'd*, 31 F.4th 898 (4th Cir. 2022).

As to the challenged statements about PERSERIS, Plaintiff claims that Defendants' references to "strong" and "positive" "anecdotal" prescriber feedback were misleading because many physicians supposedly preferred PERSERIS' competitor, UZEDY. But Defendants repeatedly warned investors about "significant challenges . . . as a result of competitive pressures," and the risks of competitor "products with unique advantages" making Indivior PLC's products

"obsolete or uneconomic." (Ex. 7 at 6; Ex. 3 at 24.)[1] Plaintiff also studiously ignores that the challenged PERSERIS statements were inactionable corporate optimism, inactionable opinions, or forward-looking statements protected by the Private Securities Litigation Reform Act's ("PSLRA") safe harbor. Nor is there any requirement under the U.S. securities laws that a company must disclose *all* customer complaints or feedback. In any event, there would be no reason to disclose such complaints here, where investors were well aware that PERSERIS required mixing and had a thicker needle than its competitor product, UZEDY.

*Second*, Plaintiff cannot overcome the Complaint's failure to satisfy the PSLRA's heightened pleading standard, which requires pleading with particularity a "cogent and compelling" "inference of scienter" that is "strong in light of other explanations." *Tellabs, Inc.* v. *Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007). In pointing to CEO Crossley's and Chief Commercial Officer Simkin's sales of Indivior stock, Plaintiff ignores the undisputed fact that their sales occurred within days of sales restrictions expiring, which makes them "far from 'suspicious.'" *Campbell* v. *Lexmark Int'l Inc.*, 234 F. Supp. 2d 680, 687 (E.D. Ky. 2002). Unable to plead a motive or opportunity for securities fraud, Plaintiff tries to allege "intentional misconduct" or "severe recklessness" through Confidential Witness ("CW") allegations. *Cozzarelli* v. *Inspire Pharms., Inc.*, 549 F.3d 618, 623 (4th Cir. 2008). But the CWs cannot support scienter for Defendants' statements about SUBLOCADE—by far Indivior's largest product— because *the CWs make no allegations about SUBLOCADE*. And, for PERSERIS, the CWs identify no aspect of any challenged statement that was false. Plaintiff's additional theories that the challenged statements and corrective disclosures were close in time, that SUBLOCADE is a "core"

---

[1]    "Ex." refers to Exhibits to the Declaration of David M.J. Rein, dated January 10, 2025 (ECF No. 37-1).

business, and that some challenged statements were made on earnings calls do not overcome his failure to plead particularized facts that any Defendant acted with intentional misconduct or severe recklessness.

## ARGUMENT

**I.  PLAINTIFF FAILS TO PLEAD ANY MATERIAL MISSTATEMENTS AS A MATTER OF LAW.**

In his Opposition, Plaintiff confirms that the Complaint falls far short of the PSLRA's heightened pleading standards.  Under Fourth Circuit law, "statements regarding projections of future performance" are not actionable unless, unlike Defendants' challenged statements, they contain "specific statements of fact or . . . guarantees."  *Marsh*, 46 F. App'x at 146.  Ignoring this settled law, Plaintiff offers the red herring that he need not "prove" any statement was misleading, which should be left to the "trier of fact."  (Opp. 7.)  But Defendants' motion does not demand "proof."  Instead, the PSLRA requires Plaintiff *to plead* with particularity "each statement alleged to have been misleading" and the "reasons why."  15 U.S.C. § 78u-4(b).  Applying this standard, the Fourth Circuit has repeatedly affirmed dismissals for failure to plead legally actionable misstatements.  *See, e.g.*, *Emps.' Ret. Sys. of Baton Rouge* v. *MacroGenics*, *Inc.*, 61 F.4th 369, 386 (4th Cir. 2023) (affirming dismissal of "inactionable opinions"); *Boykin* v. *K12, Inc.*, 54 F.4th 175, 183-84 (4th Cir. 2022) (affirming dismissal under "PLSRA's 'safe harbor' for forward-looking statements"); *Marsh*, 46 F. App'x at 146 (affirming dismissal of inactionable "projections of future performance").

### A.  Defendants' Statements About SUBLOCADE Are Not Actionable.

#### 1.  Plaintiff Cannot Escape That Defendants' Projections Were Opinions, Not Guarantees.

To try to end-run that Defendants' statements were inactionable projections, Plaintiff seizes

on *one* word in just *one* challenged statement—"will"—and repeatedly argues that this word transforms Defendants' challenged statements into guarantees of "certainty." (Opp. 1, 4, 8, 9, 14, 24.) Plaintiff is wrong for multiple reasons.

*First*, the sentence in Statement 10 containing the word "will" is an opinion statement, *not* a statement of fact or guarantee. CEO Crossley's full statement—ignored by Plaintiff—on the pertinent earnings call was: "*I think* we have a continuing headwind of the manage—of the Medicaid renewal, continuing through to the half year, where then we'll annualize that, and that headwind will go away in the back half." (Ex. 4 at 12 (emphasis added).) The Fourth Circuit instructs courts to "focus on whether the exact statement in its true context constitutes a material representation." *Marriott*, 31 F.4th at 904. Courts consistently hold that when a speaker uses "I think," what follows is an opinion. *See, e.g.*, *Steamfitters Loc. 449 Pension Plan* v. *Skechers USA, Inc.*, 412 F. Supp. 3d 353, 364 (S.D.N.Y. 2019) (holding "I think it's just more of the same" is opinion); *K12*, 66 F. Supp. 3d at 726-27 ("I think it's going to allow us to stay on track" is opinion). Adding the word "will" makes no difference. *See In re Stratosphere Corp. Sec. Litig.*, 1 F. Supp. 2d 1096, 1118 (D. Nev. 1998) ("no reasonable investor could conclude" that "[w]e think that over time, the Stratosphere will become the symbol of Las Vegas" was "reliable prediction[]"). Indeed, Plaintiff concedes opinions "generally are 'couch[ed] . . . with prefatory language,'" including "'believe' or 'think.'" (Opp. 9.) Opinion statements are actionable only if the opinion "was not sincerely held" or contains "embedded statements of untrue facts." *Omnicare, Inc.* v. *Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 176 (2015). Plaintiff pleads neither.[2]

---

[2]    In *Lambert* v. *Austin Industries*, a court interpreted the term "should" in an arbitration policy, concluding that "should" "does not ordinarily express certainty as 'will' sometimes does." 544 F.3d 1192, 1196 (11th Cir. 2008). That has no bearing on whether "I think . . . will" is an opinion statement under the securities laws, as Plaintiff claims (Opp. 8).

*Second*, the context of Mr. Crossley's statement further underscores that it was not a guarantee. The Supreme Court has directed courts to interpret each statement "in its full context" and "in light of all its surrounding text, including hedges, disclaimers, and apparently conflicting information." *Omnicare*, 575 U.S. at 190. Here, when asked "what [the Medicaid disenrollment data is] an indicator of," Mr. Crossley responded, "*I think* what we've tried to indicate is *we do believe* the one-off sort of impacts associated with these transitory items is mid to high single-digits." (Ex. 4 at 15 (emphasis added).) Mr. Preblick stated "*we expect* this trend [of Medicaid disenrollment] to begin subsiding in the second half of 2024." (Ex. 4 at 7 (emphasis added).) And the call began with warnings that "we may make forward-looking statements that are subject to risks and uncertainties" and "actual results may differ materially," as well as the "factors that may cause our results to be materially different." (Ex. 4 at 3; *see* Ex. 14.)

Plaintiff's focus on one word said in response to a single question on one call did not transform Mr. Crossley's statement into a guarantee. Statements on earnings calls must be assessed "in light of analysts' questions" and "the full discussion." *Furher* v. *Ericsson LM Tel. Co.*, 363 F. App'x 763, 764 (2d Cir. 2009). "Oral exchanges are less precise than written ones. [The speaker] did not know what question was coming, had to answer off the cuff, and did not have an opportunity to review the question and edit his answer . . . ." *Plumbers & Pipefitters Loc. Union 719 Pension Fund* v. *Zimmer Holdings, Inc.*, 679 F.3d 952, 956 (7th Cir. 2012).

*Third*, no reasonable investor would have construed Mr. Crossley's answer as providing certainty as to Medicaid disenrollment rates because Medicaid disenrollment is a variable outside Defendants' control, and Plaintiff does not allege that Defendants had information about Medicaid disenrollment that was unavailable to investors. *See In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 558 (S.D.N.Y. 2004) (opinion about regulatory approval not actionable because "it

-5-

expresses personal optimism about regulatory events not under the Company's control").[3]

For the same reasons Statement 10 is inactionable, so too are the other opinion statements Plaintiff challenges. Plaintiff asserts that Statements 3, 4, 5, and 7 were "statements of certainty" or "guarantee[s]" (Opp. 9), but he tellingly quotes no language from any of those statements. Instead, Plaintiff merely repeats Statement 10's "I think . . . will" language. (Opp. 1, 4, 8, 9, 14, 24.) Plaintiff's argument that "these statements do not contain the usual prefatory language of opinion statements," such as "I believe" or "I think," also fails. (Opp. 9.) In fact, Statements 4 and 5 did include "we believe" or "I think." (Ex. 1.) Moreover, case law does not require those specific words for a statement to be an opinion. For example, Statement 3 used similar prefatory words—"[w]e fully *expect* [headwinds] to resolve," and "we *anticipate*" accelerated growth—and Statement 7 stated "[l]ooking ahead, we *expect* this trend to begin subsiding in the second half of 2024." (Ex. 1 (emphasis added).) Statements that a company "expects" a result are statements of "opinion, not fact."[4] *Marriott*, 543 F. Supp. 3d at 120 (company "'expects' that full integration will take two years" inactionable opinion); *see MacroGenics*, 61 F.4th at 386 ("we anticipate the preliminary positive trend . . . to continue" inactionable opinion); *In re Adient plc Sec. Litig.*, 2020 WL 1644018, at *17 (S.D.N.Y. Apr. 2, 2020) ("what [defendants] 'think,' 'believe,' and 'expect'" inactionable opinions).[5]

---

[3]    Plaintiff asserts that "the Company was far better positioned to forecast the likely impact of disenrollments on Indivior's particular drugs and users than the public." (Opp. 11.) But Plaintiff pleads no particularized reasons for this *ipse dixit* assertion, which cannot be credited on a motion to dismiss. *See Credle* v. *Va. Cmty. Coll. Sys.*, 2025 WL 27827, at *9 (E.D. Va. Jan. 3, 2025) ("conclusory" allegations "afforded no weight at the motion-to-dismiss stage").

[4]    As explained in Section I.A.2, Statement 3's use of "expect" and "anticipate" also shows that it is a forward-looking statement protected by the PSLRA safe harbor.

[5]    Plaintiff says that the opinions expressed in Statements 3, 4, 5, 7, and 10 were misleading because Defendants "failed to disclose that the impact of Medicaid disenrollments under the CAA

Because Statements 3, 4, 5, 7, 9, and 10 are opinion statements, Plaintiff had to plead that those opinions were not honestly held, but, as shown in Section II below, he has failed to do so.[6]

### 2.   Defendants' Projections Were Accompanied by Detailed Warnings.

As explained in their opening brief (Def. Br. 12-17), Defendants' projections were paired with cautions to investors. Plaintiff recognizes that "[f]orecasting is subject to reasonable dispute." (Opp. 12 n.4.) As a result, the Fourth Circuit holds such projections inactionable. *See, e.g.*, *MacroGenics*, 61 F.4th at 389 ("anticipat[ing] preliminary positive trend . . . to continue" inactionable projection); *Hillson Partners Ltd. P'ship* v. *Adage, Inc.*, 42 F.3d 204, 213-15 (4th Cir. 1994) ("'on track' for a record-breaking year" inactionable projection); *Raab*, 4 F.3d at 288-90 ("expected annual growth rate of 10% to 30%" inactionable projection).

Plaintiff says that "the Court should decline to determine" whether Defendants' challenged statements were "accompanied by meaningful cautionary language" because "the adequacy of cautionary language is a question of fact." (Opp. 14.) But the Fourth Circuit and other courts in this Circuit routinely hold on a motion to dismiss that in light of risk warnings, there was no material misstatement as a matter of law. *See, e.g.*, *Hillson*, 42 F.3d at 218-19 (affirming dismissal in light of "cautionary language"); *In re USEC Sec. Litig.*, 190 F. Supp. 2d 808, 825 (D. Md. 2002) (statements "rendered immaterial as a matter of law" by "extensive cautionary language"), *aff'd*, 70 F. App'x 679 (4th Cir. 2003).[7]

---

on SUBLOCADE sales" was "difficult," "complicated," and "tough" to forecast. (Opp. 10.) But Defendants *did* disclose how difficult those forecasts were to make. (*See* Def. Br. 15-17.)

[6]   Plaintiff does not dispute that Statement 9 (Defendants "remain comfortable with" Indivior's net revenue guidance) is an opinion. Plaintiff makes no particularized allegation that this opinion was not "honestly held," requiring dismissal. *Omnicare*, 575 U.S. at 186.

[7]   Defendants were not required to "formally move for judicial notice." (Opp. 12.) Courts in this Circuit routinely take judicial notice on motions to dismiss without the need for a separate motion, and Plaintiff cites no cases to the contrary. *See, e.g.*, *Bowman* v. *Select Portfolio Servicing,*

Plaintiff next claims that the Court should ignore Defendants' risk warnings because they were supposedly "hollow" and "generic." (Opp. 14.) Not true. For example, Indivior identified the exact risk that materialized here, cautioning that its sales depend on "reimbursement from third party payors . . . including Medicare and Medicaid," and that "[d]eterioration in the timeliness, certainty, and amount of reimbursement . . . could reduce the use of, and revenues generated from, our products." (Ex. 3 at 27-28.) Indivior warned investors that it may "be adversely affected by disenrollments from government benefit programs such as Medicaid." (Ex. 3 at 28.) Because Defendants' risk warnings were "tailored to the specific risks the company face[d]," Plaintiff does not plead any actionable statement. *Marriott*, 543 F. Supp. 3d at 121; *see, e.g.*, *Elec. Workers Pension Trust Fund* v. *CommScope, Inc.*, 2013 WL 4014978, at *10-11 (W.D.N.C. Aug. 6, 2013) (no actionable statement where press release "contain[ed] forward-looking statements" and listed "risks and uncertainties"); *In re PEC Sols. Sec. Litig.*, 2004 WL 1854202, at *8 (E.D. Va. May 24, 2004) (no actionable statement where defendant warned of "forward-looking statements that involve risks and uncertainties" that "could cause . . . results to differ materially").

Many of Defendants' challenged statements were "forward-looking" and thus protected by the PSLRA safe harbor when made with meaningful cautions. (*See* Def. Br. 14.) Plaintiff claims that Statements 3, 4, 5, 7, and 10 are not protected because they "contain both present and future statements." (Opp. 13.) But the only portions of those statements that Plaintiff claims were false are the forward-looking aspects. For example, although Plaintiff points to present tense phrases in Statement 3 like "remains strong" (Opp. 13), he only alleges the forward-looking parts are false, such as "[w]e fully *expect* these items to resolve as the year progresses," and "we *anticipate* an

---

*Inc.*, 704 F. Supp. 3d 633, 642 (D. Md. 2023) ("the court may take judicial notice of publicly available information on state and federal government websites"; no judicial notice motion).

acceleration in our top- and bottom-line growth" (emphasis added). *See MacroGenics*, 61 F.4th at 389 ("we anticipate the preliminary positive trend . . . to continue" forward-looking); *Harris* v. *Ivax Corp.*, 182 F.3d 799, 804-06 (11th Cir. 1999) ("we expect reserves for returns and inventory write offs to be well above typical quarters" forward-looking); *In re Humphrey Hosp. Tr., Inc. Sec. Litig.*, 219 F. Supp. 2d 675, 683 (D. Md. 2002) ("we expect to maintain our current dividend rate" forward-looking). Likewise, Plaintiff points to present-tense language in Statement 10 such as "we *have* a continuing headwind" (Opp. 13), but the only part that Plaintiff alleges to be misleading is "*I think* . . . [the] headwind will go away in the back half [of 2024]" (emphasis added). (*See* Opp. 1, 4, 8, 9, 14, 24.)[8]   This is a textbook forward-looking statement. *See, e.g.*, *Humphrey*, 219 F. Supp. 2d at 683-84 (company "will benefit from the new lease" forward-looking).[9]

### B.       Plaintiff Does Not Plead a Material Misstatement About PERSERIS.

#### 1.       Statements 1 and 6's Generic References to Positive Customer Feedback Are Not Actionable.

Defendants disclosed to investors the competitive pressures that PERSERIS faced, including that competitor "products with unique advantages" could make Indivior's products "obsolete or uneconomic." (Def. Br. 18 (quoting Ex. 3 at 22-23).)  Plaintiff nonetheless claims that Statements 1 and 6 were misleading because those statements referenced "strong" or

---

[8]       Citing *MacroGenics*, Plaintiff says (Opp. 13) that "[f]uture performance projections . . . phrased as guarantees are actionable," but, as shown above, Statement 10 contained no guarantees and, in any event, *MacroGenics* concluded that the statement at issue was forward-looking and protected by the safe harbor. 61 F.4th at 389.

[9]       Similarly, the parts of Statements 4 and 5 alleged to be false were forward-looking parts like "[t]he impact of this disenrollment process will annualize at the end of June and therefore this headwind should begin to subside as we move through the second half of the year" (Statement 4) and "we look forward to subsiding impacts" (Statement 5). *See Humphrey*, 219 F. Supp. 2d at 683 ("new lease structure should improve monthly cash flow" forward-looking); *Harrington* v. *Tetraphase Pharms. Inc.*, 2017 WL 1946305, at *10 (D. Mass. May 9, 2017) ("[w]e look forward to reporting top-line results" forward-looking).  Plaintiff identifies no present tense portion of Statement 7.

"positive" "feedback" on PERSERIS without also detailing physicians' criticisms of PERSERIS. (Opp. 15-20.) Plaintiff's theory fails as a matter of law and undisputed fact.

*First*, Plaintiff's portrayal of the challenged statements ignores their corresponding risk warnings. Plaintiff asserts "Defendants hid from investors that the competition was eating their lunch." (Opp. 16.) But Statement 1 expressly cautioned that Indivior faced "significant challenges" from competition and "competitive pressures," and Statement 6 similarly warned that "competition has intensified." (Ex. 7 at 6; Ex. 4 at 5.) "Consider[ing] the statement[s] in the full context in which [they were] made," the "cautionary language" "negate[s] the[ir] materiality." *Plymouth Cnty. Ret. Ass'n* v. *Primo Water Corp.*, 966 F. Supp. 2d 525, 548 (M.D.N.C. 2013).

*Second*, the language about "feedback" in Statements 1 and 6 is embedded in opinion statements as one of several reasons supporting the opinion. (*See* Statement 1 ("We nevertheless continue *to believe* in the potential of [PERSERIS] . . . .") (emphasis added); Statement 6 ("Taken together, we *remain confident* in our [] net revenue guidance for PERSERIS . . . .") (emphasis added).) As explained in Section II, below, Plaintiff has not pled that Defendants objectively disbelieved their opinions about the "potential" or "revenue guidance" for PERSERIS. And a non-specific statement about positive feedback embedded in an opinion statement is not the type of "embedded false fact" that can be actionable. *Boykin*, 54 F. 4th at 183-84.

*Third*, the challenged language was embedded in forward-looking statements. (*E.g.*, Statement 1 ("we continue *to believe* in [PERSERIS'] potential") (emphasis added); Statement 6 (we "*expect* accelerating net revenue moving forward") (emphasis added).) Given Defendants' express warnings of competitive pressures, forward-looking statements like Statements 1 and 6 are protected under the PSLRA's safe harbor. 15 U.S.C. § 78u-5; *see Plymouth*, 966 F. Supp. 2d at 550 (company "expect[s] sales to increase 260% to 275%" dismissed under safe harbor).

*Fourth*, the challenged statements contained no specific information on which a reasonable investor could rely. Statement 1 referred to "strong feedback" from prescribers, and Statement 6 described "positive anecdotal prescriber feedback." Those are classic examples of generic positive statements that courts find immaterial as a matter of law. *See, e.g.*, *Pearlstein* v. *BlackBerry Ltd.*, 93 F. Supp. 3d 233, 241 (S.D.N.Y. 2015) ("customers love the [] device" is inactionable "statement[] of optimism"); *Wozniak* v. *Align Tech., Inc.*, 850 F. Supp. 2d 1029, 1036 (N.D. Cal. 2012) ("so far we're getting really great feedback" inactionable); *In re Xinhua Fin. Media, Ltd. Secs. Litig.*, 2009 WL 464934, at *8 (S.D.N.Y. Feb. 25, 2009) ("soft adjectives" like "strong" "not actionable under the securities laws"). As the Fourth Circuit has held, such statements are "the kind of puffery and generalizations that reasonable investors could not have relied upon when deciding whether to buy stock." *Longman* v. *Food Lion, Inc.*, 197 F.3d 675, 685 (4th Cir. 1999).

*Fifth*, Defendants had no duty to disclose all customer feedback. Plaintiff cites no law or regulation requiring disclosure of feedback (there is none), and "[s]ilence, absent a duty to disclose, is not misleading." *Basic Inc.* v. *Levinson*, 485 U.S. 224, 239 n.17 (1988). Plaintiff says that having vaguely referenced "positive" feedback, Defendants had a duty to disclose "negative physician feedback." (Opp. 17.) But the securities laws do not require that when a company makes a positive statement about its products, it also has to disclose all negative customer feedback. Under Plaintiff's theory, companies could never speak positively about their products without also having to disclose all negative reviews. That is not the law. "[O]ne disclosure about a particular topic '[does] not trigger a generalized duty requiring defendants to disclose the entire corpus of their knowledge' about related subjects involving the company." *Boston Ret. Sys.* v. *Telefonaktiebolaget LM Ericsson*, 2024 WL 4023842, at *4 (2d Cir. 2024); *see Jiajia Luo* v. *Sogou, Inc.*, 465 F. Supp. 3d 393, 409 (S.D.N.Y. 2020) ("'generic' statements" on subject do not

"produce[] a duty to disclose").

Plaintiff's cases bear no resemblance to this case. In *Singer* v. *Reali* (Opp. 16), the court held a company should have disclosed a "fraudulent reimbursement scheme" when issuing detailed statements about its "reimbursement practices" that, unlike here, were not "mere generic assertions." 883 F.3d 425, 442-43 (4th Cir. 2018). Similarly, in *Sinnathurai* v. *Novavax* (Opp. 17), the court held a company should have disclosed "contamination and purity issues" when, unlike here, it provided a detailed "timeline for regulatory approval and . . . claimed that there were no remaining obstacles to obtaining approval." 645 F. Supp. 3d 495, 520 (D. Md. 2022).[10]

*Sixth*, Plaintiff cannot avoid that the features of PERSERIS versus its main competitor UZEDY were known to investors. For example, Plaintiff acknowledges that PERSERIS' "thicker needles tend to be more painful" and differences with UZEDY for "administering each injection" were publicly known. (Opp. 19.) Plaintiff claims Defendants should have disclosed that doctors viewed those "product attributes" negatively (Opp. 19), but Defendants were not required to disclose obvious inferences. *See Singh* v. *Schikan*, 106 F. Supp. 3d 439, 448 (S.D.N.Y. 2015) ("companies need not depict facts in a negative or pejorative light or draw negative inferences to have made adequate disclosures"). This is nothing like Plaintiff's cases (Opp. 19) where investors could not have known the undisclosed information. *See In re Willis Towers Watson plc Proxy Litig.*, 937 F.3d 297, 305 (4th Cir. 2019) (failure to disclose "secret compensation discussions"); *Tchatchou* v. *India Globalization Cap. Inc.*, 2021 WL 307415, at *1 (D. Md. Jan. 29, 2021) (failure

---

[10]     Likewise, in *Cambridge Retirement System* v. *Jeld-Wen Holding* (Opp. 16-17), the court held that a company was required to disclose its "anticompetitive behavior" when it "publicly touted its legal pricing strategies." 496 F. Supp. 3d 952, 962 (E.D. Va. 2020). And, in *In re Emergent BioSolutions Inc. Securities Litigation* (Opp. 16), defendants could not "omit . . . that [their] facility was not considered manufacturing-ready" when "tout[ing] [the facility's] pre-manufacturing readiness." 2023 WL 5671608, at *19 (D. Md. Sept. 1, 2023).

-12-

to disclose "product was illusory"); *In re Unicapital Corp. Sec. Litig.*, 149 F. Supp. 2d 1353, 1372 (S.D. Fla. 2001) (failure to disclose "fleet of aircraft [was] effectively useless").

Pointing to PERSERIS' well-known features is not, as Plaintiff claims, a "'truth on the market' defense." (Opp. 19.) Courts routinely consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" in assessing whether plaintiffs have pled material falsity on motions to dismiss. *Katyle* v. *Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011). Here, for example, the Complaint cites two studies reporting that thicker needles are associated with more painful injections. (*See* AC ¶ 34.) In his Opposition (but not his Complaint), Plaintiff asserts that "while [his] sources were accessible on the Internet, they were not intensely transmitted to the public." (Opp. 20.) But Plaintiff does not and cannot plead that Defendants took any steps to hide obvious facts, such as that thicker needles can be more painful or that a product requiring mixing is less convenient than a pre-mixed product. *See Hillson*, 42 F.3d at 213-14 (no duty to disclose "obvious" results).

### 2.    Defendants' Other PERSERIS Statements Are Not Actionable.

Plaintiff makes little effort to defend his claims based on the remaining PERSERIS-related statements. Plaintiff says that Statements 8, 12, 14, and 16,[11] which reflect Indivior's net revenue projections for PERSERIS and "confidence" in those projections, were misleading because they did not include "negative physician feedback" and "impact from the IRA." (Opp. 18.) Under settled law, expressing "confidence" is not actionable. *City of Hialeah Emps.' Ret. Sys.* v. *FEI Co.*, 289 F. Supp. 3d 1162, 1173 (D. Or. 2018) ("[e]xpressing confidence or lack thereof in a given projection is not different from making a projection."); *see Boca Raton Firefighters & Police Pension Fund* v. *Bahash*, 506 F. App'x 32, 37 (2d Cir. 2012) (statement that company is "confident

---

[11]    Plaintiff makes the same arguments about Statements 1 and 6, which also are unavailing for the reasons discussed in Section I.B.1 above.

it will" "compete successfully . . . in the future" is "mere 'puffery'").

In any event, those statements contained no guarantee about the projections and warned of the risk that they would not bear out. For example, when making Statement 8, Mr. Crossley cautioned that "competition has intensified in the risperidone LAI category." (Ex. 4 at 5.) And when making Statements 12, 14, and 16, Indivior warned "[a]ctual results may differ materially," including because of "our dependence on third-party payors for the reimbursement of our products and the increasing focus on pricing and competition in our industry." (Ex. 15 at 3; Ex. 23 at 3.)

Tellingly, Plaintiff devotes barely a footnote to trying to show that Statements 8, 12, 14, and 16 were not forward-looking. (Opp. 16 n.6.) Those statements plainly looked ahead to the future. (*E.g.*, Statement 16 (estimate for 2024).) And Defendants coupled them with specific warnings. (*E.g.*, Ex. 23 at 3 (warning with Statement 16 of "dependence on third-party payors" and "competition in our industry").) Defendants' "extensive cautionary language" "render[s] immaterial as a matter of law" any alleged misstatements. *USEC*, 190 F. Supp. 2d at 825.

As to Statement 11, a presentation slide stating PERSERIS was "capturing [a] disproportionate share of [New-to-Brand Prescriptions]," Plaintiff does not dispute that "disproportionate share" is too vague to be false. *See In re iRobot Corp. Sec. Litig.*, 527 F. Supp. 3d 124, 135-36 (D. Mass. 2021) (statement "tout[ing] the company's purportedly strong market share" is "not false" and is "general corporate optimism" and "vague"). Instead, Plaintiff now claims that "the data in the slides are off." (Opp. 21.) But Plaintiff does not allege what "data" was "off" or how, which does not meet the PSLRA's particularized pleading requirements. *See In re Trex Co. Sec. Litig.*, 454 F. Supp. 2d 560, 571 (W.D. Va. 2006) ("the PSLRA requires that the plaintiff state with particularity the untrue statements . . . defendant allegedly made [and] specify why the statement . . . was misleading"). Plaintiff claims CW 5 alleged that Statement 11 is false.

-14-

(Opp. 21; AC ¶ 88.)  But CW 5 alleged no "data" that was false, and, in any event, the statement covered nationwide sales, whereas CW 5's alleged role was only in "western Oklahoma and south central Kansas."  (AC ¶ 87.)  *See Trex*, 454 F. Supp. 2d at 573 (CWs not "in a position to personally know the information they conveyed" cannot "support pleadings under the PSLRA").

## II.   PLAINTIFF HAS NOT PLED THE REQUIRED STRONG INFERENCE OF SCIENTER.

In enacting the PSLRA, "Congress did not merely require plaintiffs . . . to allege facts from which an inference of scienter rationally *could* be drawn.  Instead, Congress required plaintiffs to plead with particularity facts that give rise to a 'strong'—*i.e.*, a powerful or cogent—inference." *Tellabs*, 551 U.S. at 323.  The Supreme Court has directed that "in determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences." *Id.*  Unable to satisfy his burden to plead an "inference of scienter" that is "cogent and compelling" and "strong in light of other explanations," *id.* at 324, Plaintiff falls back on reciting that the Court should conduct its scienter analysis "holistically" (Opp. 21, 27).  But a "holistic" analysis cannot save Plaintiff's deficient allegations:  "[Z]ero plus zero (plus zero plus zero plus zero) cannot equal one." *In re Diebold Nixdorf, Inc., Sec. Litig.*, 2021 WL 1226627, at *15 (S.D.N.Y. Mar. 30, 2021).

### A.   Plaintiff Does Not Allege Any Motive or Opportunity for Securities Fraud.

In his Opposition, Plaintiff confirms that he has not pled that any Defendant had the motive or opportunity to commit fraud, which "weighs heavily" against finding scienter sufficiently pled. *San Antonio Fire & Police Pension Fund* v. *Syneos Health Inc.*, 75 F.4th 232, 242 (4th Cir. 2023).  As to Mr. Preblick, Plaintiff concedes that he pled no motive allegations at all.  (Opp. 29.)  For Messrs. Crossley and Simkin, Plaintiff has no answer to the undisputed fact, which this Court can and should consider on this motion, that their stock sales occurred within days of the end of vesting

-15-

periods for sales restrictions established years earlier.  (*See* Def. Br. 21-22; Exs. 16-18.)

Plaintiff's sole response is that Messrs. Crossley and Simkin "could have held their shares; instead, they chose to sell."  (Opp. 29.)  But the timing of stock sales is "far from 'suspicious,'" *Campbell*, 234 F. Supp. 2d at 687, where, as here, the sales were pegged to something happening—such as shares vesting—at a predetermined date publicly disclosed years before.  "[I]nsider trading can imply scienter only if the timing and amount of a defendant's trading were 'unusual or suspicious.'" *Teachers' Ret. Sys. of La.* v. *Hunter*, 477 F.3d 162, 184 (4th Cir. 2007).  Courts have found that where executives are "legally forbidden to trade" stock for a certain period, stock sales after that time expires "do not give rise to a strong inference" of scienter.  *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 987-88 (9th Cir. 1999), *superseded by statute on other grounds*.  Messrs. Crossley's and Simkin's sales were "perfectly reasonable in light of the" fact that they occurred within days of multi-year vesting periods expiring.  *Campbell*, 234 F. Supp. 2d at 687 (stock sales "perfectly reasonable in light of the impending expiration of many of [defendant's] stock options").

Moreover, even where the size of stock sales "*appear[s]* extremely significant," those sales cannot support a strong inference of scienter where Plaintiff "overlooks crucial facts pertaining to [the] sales," such as the expiration of sales restrictions.  *Silicon Graphics*, 183 F.3d at 987-88 (sale of over 75% of stock not suspicious where defendant "was legally forbidden to trade" until "period in which his sales occurred"); *see, e.g.*, *Ronconi* v. *Larkin*, 253 F.3d 423, 435-37 (9th Cir. 2001) (affirming dismissal where defendant sold 98% of her stock—and seven other defendants sold at least 69% each—when previously "not able to trade . . . under SEC regulations").  Ultimately, the "more cogent and compelling" inference is that Messrs. Crossley and Simkin sold their shares "at [their] earliest opportunity." *Plymouth Cnty. Ret. Assoc.* v. *ViewRay, Inc.*, 556 F. Supp. 3d 772,

800 (N.D. Ohio 2021) (no scienter where defendant "exercised his options at his earliest opportunity").

**B.    Plaintiff Does Not Allege Intentional Misconduct or Severe Recklessness.**

*Confidential Witnesses.*  Plaintiff claims Defendants acted with intentional misconduct or severe recklessness largely based on CW allegations.  (Opp. 22-26.)  But Plaintiff does not dispute that the CWs allege nothing about Indivior's principal product, SUBLOCADE, making their allegations irrelevant to scienter for statements on that topic.  All the CW allegations concern PERSERIS, which in 2023 comprised less than 4% of Indivior's net revenues.  (Ex. 6 at 3.)  As a result, even as to the PERSERIS statements, the CW allegations do not allow any inference of fraudulent intent.  *See United States* v. *Kipp*, 2017 WL 2662983, at *18 (W.D.N.C. June 20, 2017) ("In considering securities fraud, courts generally use five percent as a starting point for evaluating whether fraudulent conduct is quantitatively material."), *aff'd*, 793 F. App'x 166 (4th Cir. 2019).

**1.  CEO Crossley.**  Plaintiff claims that scienter can be "infer[red]" for Mr. Crossley's statements about PERSERIS (Statements 1, 6, 16) "because of direct communications" about "negative [provider] feedback."  (Opp. 22.)  But the only purported "direct communications" Plaintiff identifies is the allegation of CW 2—who supervised North Carolina sales personnel—that Mr. Crossley "sometimes accompanied sales representatives to meetings with physicians" at which he asked "what was holding them back from using PERSERIS" and "stopping them from selling more."  (Opp. 22.)  Nothing about that allegation contradicts Mr. Crossley's challenged statements about PERSERIS.[12]  Plaintiff tries to bolster his scienter allegations by offering (Opp.

---

[12]    This case is nothing like *Zak* v. *Chelsea Therapeutics International, Inc.* (Opp. 22), where defendants "knew that the FDA expected two successful efficacy studies," but represented to investors that one would suffice.  780 F.3d 597, 609 (4th Cir. 2015).  Nor is it like *Novavax* (Opp. 22), where a company assured investors it had "eliminated all of the serious hurdles to getting . . . an improved vaccine," but "faced significant manufacturing concerns" and "delays" in "seeking

-17-

22-23) the supposed knowledge of other CWs, such as CW 4, but they allege no "direct communications" with Mr. Crossley. *See Glaser* v. *The9, Ltd.*, 772 F. Supp. 2d 573, 590 (S.D.N.Y. 2011) (CW allegations "insufficient absent some allegation that the witness communicated with the individual defendants" or "was privy to [their] knowledge").

Plaintiff offers no CW allegations about SUBLOCADE, but claims that Mr. Crossley knew his statement that he "think[s]" the impact of Medicaid disenrollments "will go away in the back half [of 2024]" (Statement 10) was misleading because he later stated "the adverse impact of Medicaid disenrollments was . . . 'very tough to forecast.'" (Opp. 24.) But Mr. Crossley's later statement contains nothing suggesting that he did not genuinely hold his earlier opinion.

**2. CFO Preblick.** Plaintiff points to CW 2's allegation that Mr. Preblick "*occasionally* joined" a weekly call where "the issue of reduced PERSERIS reimbursements became a regular topic." (Opp. 25 (emphasis added).) But CW 2 does not allege that Mr. Preblick was on any call where this issue was in fact discussed, and CW allegations "must be discounted 'steeply' if they are not sufficiently particularized." *Utesch* v. *Lannett Co.*, 316 F. Supp. 3d 895, 904-05 (E.D. Pa. 2018) (discounting CW allegations that defendant "must have known" about price fixing because he "frequently attended healthcare conferences"). And even if Mr. Preblick knew of some issues with PERSERIS reimbursements, that does not suggest he knew his statements about PERSERIS' revenue projections were false. *See, e.g.*, *Plumbers & Steamfitters Loc. 773 Pension Fund* v. *Canadian Imperial Bank of Com.*, 694 F. Supp. 2d 287, 300 (S.D.N.Y. 2010) (argument that defendant "received contradictory information because he 'was ultimately in charge of all . . .

---

regulatory approval." 645 F. Supp. 3d at 519. And in *Construction Industries & Laborers Joint Pension Trust* v. *Carbonite, Inc.* (Opp. 24), defendants represented a product was viable despite knowing it had "never once done what it was supposed to." 22 F.4th 1, 9-10 (1st Cir. 2021).

-18-

activities related to subprime exposure' is too general . . . to conclude [he] had actionable data alerting him to the falsity of his statements.").

**3. Chief Commercial Officer Simkin.** Plaintiff claims that Mr. Simkin "*would have* known about reduced PERSERIS reimbursements" based on what his colleague "*would have*" found relevant coupled with the vague assertion that "[i]nformation chains within companies . . . keep executives informed." (Opp. 26 (emphasis added).) "Stacking inference upon inference in this manner violates the [PSLRA's] mandate that the strong inference of scienter be supported by facts, not other inferences." *Maguire*, 876 F.3d at 548; *see Glaser*, 772 F. Supp. 2d at 594 (allegation defendant "would have known" information contradicting challenged statements "insufficient to support scienter").[13]   Even if Mr. Simkin knew that PERSERIS reimbursements were reduced by some unspecified amount, Plaintiff does not allege how such awareness "conflicted" (Opp. 26) with his statement challenged in the May 2024 presentation (Statement 12).

*Temporal Proximity.* Plaintiff concedes that "temporal proximity alone" between the challenged statements and corrective disclosures does not plead scienter. (Opp. 27.) That is because in every case the "corrective disclosures" follow the challenged statements and permitting temporal proximity to satisfy Plaintiff's pleading burden would amount to "little more than pleading fraud by hindsight." *KBC Asset Mgmt. NV* v. *DXC Tech. Co.*, 19 F.4th 601, 612-13 (4th Cir. 2021). Although Plaintiff points to the temporal proximity referenced in *In re Pareteum Securities Litigation* (Opp. 27), that case found scienter pled mainly based on defendants learning from an auditor that "the Company's internal controls were 'inadequate and ineffective,'" but

---

[13]   In *Novavax* (Opp. 26), the court found the inference that contradictory information was conveyed to defendant "strengthen[ed]" because the information was "by law [] required to be brought to the company's attention" and pertained to "a core operation." 645 F. Supp. 3d at 529-30. Here, neither is true: Plaintiff does not allege any information contradicting Mr. Simkin's statements was required to be conveyed to him, and PERSERIS was not a "core operation."

-19-

nonetheless issuing false financial reporting, not mere timing.   2021 WL 3540779, at *16 (S.D.N.Y. Aug. 11, 2021).

*Core Operations.*  Plaintiff's claim that scienter should be inferred because SUBLOCADE is a "core" business (Opp. 27) ignores that the core operations doctrine is applied only "rarely." *Yates* v. *Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 890 (4th Cir. 2014).  The doctrine can support scienter only where, unlike here, there are "particularized allegations that a defendant was aware of problems in those operations."  (Opp. 27.)  In any event, Plaintiff's claim is irrelevant to Defendants' statements about PERSERIS, which he does not allege was a "core" operation.

*Earnings Calls.*  Plaintiff makes the circular argument that because "the aim of earnings calls is to inform investors," the fact that some challenged statements were made on "conference calls, or in presentations to analysts and investors" supports scienter. (Opp. 28.)  But Plaintiff does not explain how the aim of earnings calls is different from SEC filings, press releases, or virtually all other company communications, and courts routinely find scienter insufficiently pled for statements made on earnings calls.  *See, e.g.*, *Boykin*, 54 F.4th at 186-87 (no scienter for earnings call statements); *Syneos*, 75 F.4th at 243 (same); *K12*, 66 F. Supp. 3d at 717-19 (same).[14]

## CONCLUSION

The Complaint should be dismissed in its entirety and with prejudice.   Plaintiff's perfunctory request to amend (Opp. 30 n.9) should be rejected where Plaintiff has already amended once, "fail[ed] to formally move to amend and fail[ed] to provide the district court with any proposed amended complaint or other indication of the amendments he wishes to make." *Estrella* v. *Wells Fargo Bank, N.A.*, 497 F. App'x 361, 362 (4th Cir. 2012).

---

[14]   Because Plaintiff has failed to plead a primary violation of Section 10(b), Plaintiff's Section 20(a) claim also fails.

Respectfully submitted,

/s/ *Brian E. Pumphrey*
Brian E. Pumphrey (VSB No. 47312)
Robert J. Giuffra, Jr.*                Garrett H. Hooe (VSB No. 83983)
David M.J. Rein*                       Frank Talbott V (VSB No. 86396)
Julia A. Malkina*                      MCGUIREWOODS LLP
SULLIVAN & CROMWELL LLP                 Gateway Plaza
125 Broad Street                       800 East Canal Street
New York, New York 10004               Richmond, Virginia 23219
Telephone: (212) 558-4000              Telephone: (804) 775-1000
Facsimile: (212) 558-3588              Facsimile: (804) 775-1061
giuffrar@sullcrom.com                  bpumphrey@mcguirewoods.com
reind@sullcrom.com                     ghooe@mcguirewoods.com
malkinaj@sullcrom.com                  ftalbott@mcguirewoods.com

* Admitted *pro hac vice*

*Counsel for Defendants*

February 24, 2025

**CERTIFICATE OF SERVICE**

I certify that on February 24, 2025, I filed this Reply in Further Support of Defendants'

Motion to Dismiss the Amended Complaint on the Court's CM/ECF docket which sent a notice of

electronic filing to all counsel of record in this matter.

/s/ *Brian E. Pumphrey*
Brian E. Pumphrey (VSB No. 47312)
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219
Telephone: (804) 775-1000
Facsimile: (804) 775-1061
bpumphrey@mcguirewoods.com